Oscar **WYATT**, Jr., Plaintiff-Appellant,

v.

Jerome **KAPLAN**, et al.,
Defendants-Appellees.

No. 81-2246.

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1982.

---

Fulbright & Jaworski, Thomas R. McDade, Houston, Tex., for plaintiff-appellant.

Vinson & Elkins, Charles W. Schwartz, Houston, Tex., for defendants-appellees.

Before WISDOM, POLITZ and TATE, Circuit Judges.

WISDOM, Circuit Judge:

This action is one for conspiracy to commit libel and slander.[1] It concerns statements that one of the defendants, Jerome Kaplan, allegedly made to a reporter for *The Wall Street Journal* regarding a stockholder derivative suit he had filed against the plaintiff, Oscar S. Wyatt, Jr. The district court denied the plaintiff discovery and, in an unpublished memorandum and order, dismissed the action for lack of personal jurisdiction. We affirm.

I.

Oscar Wyatt, a Texas resident, is the Chief Executive Officer of the Coastal Corporation (Coastal), which has its headquar-

---

1. The original complaint filed in the United States District Court for the Southern District of Texas, Houston Division, also alleged conspiracy to commit barratry and abuse of proc-

ess. For reasons that will become apparent from our discussion, those claims are not before us in this appeal. *See* note 5.

ters in Houston. Jerome Kaplan is a lawyer residing in Philadelphia and a Coastal stockholder. On November 5, 1980, Kaplan filed a stockholder derivative suit against Wyatt and Coastal in the United States District Court for the Southern District of New York. The complaint accused Wyatt of various misdeeds injurious to Coastal and included the allegation that Wyatt had "interpositioned himself in numerous ... transactions with the resultant skimming off of substantial amounts of profits which otherwise would have gone to Coastal".[2]

On the same day, Steven Mufson, a reporter for *The Wall Street Journal*, telephoned Kaplan and interviewed him about the suit. On November 6, 1980, *The Wall Street Journal* published a report of the suit. The next day the *Journal* carried a similar report in its southwestern edition, which is distributed in Texas. To the extent relevant in this defamation action, the two reports were virtually identical, and they read as follows:

NEW YORK—A suit charging Oscar S. Wyatt, Jr., chairman of Coastal Corp. with "skimming off substantial amounts of profits" from the company was filed here yesterday in U.S. District Court. . . .

Jerome Kaplan, a Philadelphia corporate, estate, and tax lawyer with the firm of Abrahams & Loenstein [sic], filed the suit because, he said, he "didn't like what was going on." . . .

The suit alleges that Mr. Wyatt "interpositioned himself" in Coastal's exchanges of crude oil and petroleum products on the spot market, keeping a portion of would-be profits for himself.

In addition, the suit charges that Coastal paid $326,266 to Mr. Wyatt for the use of his personal airplane.

Finally, the suit alleges that Mr. Wyatt influenced an ill-advised tanker deal benefiting a company owned predominantly by his son. Mr. Wyatt allegedly helped arrange the sale for $1 million of a Coastal tanker to WJS Shipping Associates, a partnership owned 56% by Clark D. Wyatt. WJS, after repairing the ship, would lease it back to Coastal for $2 million a year.

\* \* \* \* \* \*

Wall St.J., Nov. 6, 1980, at 21, col. 1.

On December 9, 1980, Wyatt brought this action in the United States District Court for the Southern District of Texas, naming as defendants Kaplan, his law firm, Abrahams & Loewenstein, the lawyers who represented him in the derivative suit, Richard M. Meyer and Melvyn I. Weiss, and their law firm, Milberg, Weiss, Bershad & Specthrie. Subject matter jurisdiction of the case was based on diversity of citizenship. 28 U.S.C. § 1332(a)(1). The complaint alleged that Kaplan had "maliciously published to the *Wall Street Journal* ... false and untrue accusations concerning Wyatt". Specifically, it accused Kaplan of telling Mufson that Wyatt was "skimming off substantial amounts of profits" from Coastal. The other defendants were alleged to have conspired with Kaplan in committing this libel and slander.

On February 9, 1981, the defendants moved to dismiss for lack of personal jurisdiction, under Fed.R.Civ.P. 12(b)(2). The next day, Wyatt noticed the depositions of the individual defendants and of three other lawyers, members of the defendant law firms. The defendants moved for a protective order, and the district court deferred the requested depositions pending its disposition of the motion to dismiss. On May 21, 1981, the district court granted the motion to dismiss, and the requested depositions never took place. Wyatt brought this appeal, in which he asserts two grounds for reversal. He argues that the district court committed reversible error both in denying him discovery to develop jurisdictional facts and in finding the evidence justified dismissal. Our resolution of the discovery question is best understood in the light of our analysis of the jurisdictional issue. We therefore consider first whether the evi-

**2.** On January 28, 1981, the district court in New York dismissed the derivative suit, without prejudice, for improper venue.

dence before the district court justified dismissal.

## II.

■ Under the Federal Rules of Civil Procedure, a federal district court in a diversity case may exercise personal jurisdiction over a defendant residing outside the state in which it sits only to the extent permitted by state law. Fed.R.Civ.P. 4(d)(7), (e); *Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co.,* 5 Cir. 1980, 623 F.2d 375, 377; *Arrowsmith v. United Press International,* 2 Cir. 1963, 320 F.2d 219, 222–26 (en banc) (Friendly, J.); 4 C. Wright & A. Miller, Federal Practice and Procedure § 1075 at 131 (1981 Supp.). Compliance with state law, however, is not enough to establish the valid exercise of personal jurisdiction; the federal Constitution must also be considered. Specifically, due process requires the dismissal of a suit against a nonresident defendant unless he has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' ". *International Shoe Co. v. Washington,* 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (quoting *Milliken v. Meyer,* 1940, 311 U.S.

457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278, 283); *Hanson v. Denckla,* 1958, 357 U.S. 235, 251–54, 78 S.Ct. 1228, 1238–40, 2 L.Ed.2d 1283, 1296–98; *Walker v. Newgent,* 5 Cir. 1978, 583 F.2d 163, *cert. denied,* 1979, 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374. Accordingly, questions of personal jurisdiction generally entail inquiries under both applicable state law and the federal constitution. *Product Promotions, Inc. v. Cousteau,* 5 Cir. 1974, 495 F.2d 483, 489.

Wyatt seeks to premise personal jurisdiction on the Texas long-arm statute, which authorizes service of process on nonresidents who "engage in business" in Texas, "in any action ... arising out of such business". Tex.Rev.Civ.Stat.Ann. art. 2031b § 2 (Vernon 1964).[3] Specifically, he relies on a provision that defines "doing business" to include "the committing of any tort in whole or in part in this State". Tex.Rev. Civ.Stat.Ann. art. 2031b, § 4 (Vernon Supp. 1982).[4] The district court found that Wyatt had not adequately demonstrated the commission of a tort in Texas and concluded that article 2031b was inapplicable. Dismissing the action on this ground, the court did not consider the constitutional question. Although our reasoning differs slightly from that of the district court, we agree

**3.** Section 2 of article 2031b provides in full:
 Sec. 2. When any foreign corporation, association, joint stock company, partnership, or non-resident natural person, though not required by any Statute of this State to designate or maintain an agent, shall engage in business in this State, in any action in which such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party arising out of such business, service may be made by serving a copy of the process with the person who, at the time of the service, is in charge of any business in which the defendant or defendants are engaged in this State, provided a copy of such process, together with notice of such service upon such person in charge of such business shall forthwith be sent to the defendant or to the defendants [sic] principal place of business by registered mail, return receipt requested.
 Section 3 of the statute provides that if a nonresident defendant "engages in business in this State" but "does not maintain a place of regular business in this State or a designated agent upon whom service may be made ...", then the act of doing business in Texas "shall

be deemed equivalent to an appointment ... of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State". Tex.Rev.Civ.Stat. Ann. art. 2031b, § 3 (Vernon 1964). In the present case, the plaintiff served the Texas Secretary of State pursuant to § 3.

**4.** Section 4 of article 2031b provides in full:
 Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State. The act of recruiting Texas residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas shall be deemed doing business in this State.

with its conclusion and also find it unnecessary to reach the constitutional question.

■ On a motion to dismiss for lack of personal jurisdiction, the plaintiff rather than the movant has the burden of proof. *Southwest Offset, Inc. v. Hudco Publishing Co.*, 5 Cir. 1980, 622 F.2d 149, 152 (per curiam). He need not, however, establish personal jurisdiction by a preponderance of the evidence; *prima facie* evidence of personal jurisdiction is sufficient. *See Product Promotions*, 495 F.2d at 491; *Walker v. Newgent*, 583 F.2d at 166. Conflicts between the affidavits submitted on the question of personal jurisdiction are thus resolved in favor of the plaintiff. *See O'Hare International Bank v. Hampton*, 7 Cir. 1971, 437 F.2d 1173, 1176. When, as in this case, personal jurisdiction is predicated on the commission of a tort within the state, of course the jurisdictional question involves some of the same issues as the merits of the case, and the plaintiff must make a *prima facie* case on the merits to withstand a motion to dismiss under rule 12(b)(2). *Jetco Electronic Industries, Inc. v. Gardiner*, 5 Cir. 1973, 473 F.2d 1228, 1232. In such a case, of course, it is not enough to establish *prima facie* that a tort has occurred. Because the plaintiff bears the burden of establishing *jurisdiction, see Product Promo-*

tions, 495 F.2d at 91, he must also make a *prima facie* showing that the tort occurred within the state.

■ Wyatt alleges that when Kaplan spoke to Mufson in the telephone interview, he committed a tort by uttering defamatory statements, specifically the statement about "skimming off substantial amounts of profits". The other defendants purportedly committed torts by conspiring with Kaplan. Wyatt further alleges that the torts occurred "in part" in Texas, where his reputation was damaged when the southwestern edition of *The Wall Street Journal* republished that language.[5] The defendants argue that Kaplan made no defamatory statement to Mufson and that the newspaper article quoted the language in question from the complaint filed in the New York derivative action. Allegations in a complaint filed in a judicial proceeding are privileged, *see* W. Prosser, Handbook of the Law of Torts § 114, at 778 (4th ed. 1971), and Wyatt does not allege that he was injured in Texas by publication of statements in the complaint.[6] His case thus stands or falls with the assertion that the language quoted in the newspaper article originated in Kaplan's telephone interview rather than the complaint.[7]

**5.** This theory of long-arm jurisdiction, which involves a wrong committed outside the state with effects in the state, apparently cannot apply to Wyatt's claims for barratry and abuse of process, *see* note 1. For this reason Wyatt does not press those claims in this appeal. *See* Appellant's Original Brief at 9 n.23.

**6.** This common law rule is recognized in New York by statute. "[A] civil action cannot be maintained against any person . . . for the publication of a fair and true report of any judicial proceeding." N.Y.Civ. Rights Law § 94 (McKinney). *See The Savage is Loose Co. v. United Artists Theatre Circuit, Inc.*, 413 F.Supp. 555 (S.D.N.Y.1976) relying on common law principles; *Phillips v. Murchison*, 252 F.Supp. 513 (S.D.N.Y.1966), *aff'd as to this point*, 383 F.2d 370 (2d Cir. 1967), *cert. denied*, 390 U.S. 958, 88 S.Ct. 1050, 19 L.Ed.2d 1154 (1968). *See Greebelt Cooperative Publishing Association, Inc. v. Bresler*, 1970, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6; *Dudley v. Farmer Branch Daily Times*, 550 S.W.2d 99 (Tex.Civ. App.1977, *writ ref'd n.r.e.*), citing Art. 5432 Tex.Rev.Stat.; *DeMankowski v. Ship Channel*

*Development Co.*, 300 S.W. 118 (Tex.Civ.App. 1927, no writ) is distinguishable in that the defendant used a complaint as a sham, for the purpose of making a defamatory statement. "The common law rule of absolute privilege in judicial pleadings is not the law of Louisiana." *Sunseri v. Shapiro*, 138 So.2d 661 (La.App. 1962).

**7.** It is not clear that Wyatt would prevail even if he could establish that *The Wall Street Journal* was quoting Kaplan's statements in the telephone interview. The defendants argue that the privilege accorded judicial proceedings extends to repetition by the parties of allegations in the complaint. Wyatt concedes that this argument might be sound under the law of New York, *see The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc.*, S.D.N.Y. 1976, 413 F.Supp. 555, but argues that Texas law, applicable here, does not recognize such a broad privilege. The defendants, for their part, contend that Texas law with respect to this privilege is the same as that of New York. Wyatt also argues that privilege is an affirmative defense, which the defendants may not

Wyatt submitted to the district court no affidavits in support of his position. He did submit copies of the newspaper article itself and a transcript of Kaplan's deposition in the New York derivative action. The relevant parts of the deposition tended to establish that one of the quotes in the article was "essentially" what Kaplan said, that Kaplan may have accused Wyatt of "double-dealing" or something similar in the interview, and that Kaplan considered "double-dealing" synonymous with "skimming off".[8] On this basis, Wyatt urged the district court to infer that Kaplan had used the term "skimming off" in the interview.

The defendants submitted an affidavit by Mufson, stating that he wrote the article, that the reference to "skimming off" substantial amounts of profits in the article was taken from the complaint in the derivative suit, and that Kaplan had not made the quoted statement to him.[9] Based on this evidence, the district court found that Wyatt had not discharged his burden. The court noted that the New York complaint contained language identical to that in the newspaper article and found that the article itself purported to quote the complaint, not the interview with Kaplan.[10] The court

---

8. Wyatt relies essentially on the following portions of Kaplan's deposition:

raise on the question of personal jurisdiction, when the plaintiff's burden is only to establish a *prima facie* case. We need not decide any of these issues, however, because we find that Wyatt has not made a *prima facie* showing that the article was quoting Kaplan, *see* p. 7. Texas law clearly recognizes, and Wyatt does not dispute, the privilege of papers filed in judicial proceedings. *Morris v. Hargrove*, Tex.Civ.App. 1961, 351 S.W.2d 666, *writ ref. n.r.e. See also Russel v. Clark*, Tex.Civ.App.1981, 620 S.W.2d 865, 868; *Clark v. Grigson*, Tex.Civ.App.1979, 579 S.W.2d 263, 265, *writ ref. n.r.e.* We intimate no view whether any statements Kaplan may have made to Mufson would have been privileged under the law of either Texas or New York.

8. Wyatt relies essentially on the following portions of Kaplan's deposition:

Q. And did you comment about [the lawsuit to Mr. Mufson]?

A. I said no, I wouldn't comment about it. Then he asked me why I filed it, and *there is a quote in this article which is essentially what I said, I don't remember the exact words, that I didn't like the double-dealing that I think had occurred.*

Q. That you think what?

A. "That I think may have occurred in connection with Coastal."

* * * * * *

Q. When you mentioned to him that you didn't like the double-dealing, what do you mean by "double-dealing"?

A. I don't like, just as I said, I don't like corporate officers, if it occurs, to use their position to aggrandize themselves at the expense of the stockholders.

* * * * * *

Q. What does "double-dealing" mean in the corporate context? Does it mean to you that the corporate officer is taking something that doesn't belong to him and properly belongs to the corporation?

A. It could be.

Q. Is that what it meant to you when you talked to this Wall Street Journal reporter?

A. That if he was using his position to benefit himself on the expense of the stockholders, yes.

Kaplan Dep. 19–21 (emphasis added).

Q. Is that "skimming off" language the same or does it mean the same thing as does "double-dealing"?

A. Yes.

Kaplan Dep. 28.

Q. Did you use the words "skimming off profits" in your conversation?

* * * * * *

A. I don't recall the exact words I used.

Kaplan Dep. 48–49.

Q. You are saying double-dealing is the same as skimming off profits?

A. Substantially, self-aggrandizement at the expense of the stockholders.

Kaplan Dep. 67–68.

Q. Are the articles, Kaplan Exhibits 2 and 3, accurate reflections of what you told the Wall Street Journal reporter during the conversation relative to this suit?

A. Yes.

Kaplan Dep. 126.

9. The defendants also submitted affidavits by the other individual defendants, concerning their contacts with Texas generally. Although not relevant here, these affidavits may bear on the theory of personal jurisdiction Wyatt asserts in his argument on discovery. *See* Part III.

10. The New York complaint referred to "skimming off *of* substantial amounts of profits" (emphasis added). The deletion in the newspaper article of the word "of", which had the effect of fitting the quotation to its grammatical surroundings, cannot impeach the article's attribution of the language to "a *suit* charging" the misdeeds in question, Wall St. J., Nov. 6, 1980, at 21, col. 1 (emphasis added).

also pointed out that the Kaplan deposition was ambiguous and could be read consistently with the Mufson affidavit. The district court therefore concluded that Wyatt did not make a *prima facie* case that Kaplan had uttered any defamation to Mufson.

We agree that Wyatt has not made the necessary showing, although we take an alternate route in reaching this conclusion. We find, as did the district court, that Kaplan's deposition can be harmonized with Mufson's affidavit. But we also find that the deposition, taken alone, might suggest the inferences that Wyatt urges. Even if we draw all these inferences, however, and disregard the conflicting assertions of the affidavit, *see* p. 5, we still conclude that Wyatt has not made a *prima facie* case that any tort was committed, even in part, in Texas.

■ The newspaper article, as the district court found, unmistakably attributes the language in question to the complaint.[11] Since the complaint did contain the "skimming off" language, we have no reason to doubt this attribution. Thus, even assuming that Kaplan used identical language in the interview, there is no evidence that this oral statement was republished in Texas. Wyatt relies entirely on the newspaper article for the republication element of his case, and the article unambiguously refutes his position.

■ We do not understand Wyatt to argue that the privilege accorded the allegations in the complaint, or *The Wall Street Journal*'s republication of them, may be defeated by Kaplan's uttering similar, nonprivileged, allegations to Mufson. Such an argument would find no support in precedent or policy and would, if accepted, unreasonably impair the privilege as it is now recognized. Wyatt argues only that the "skimming off" statement was in fact quoted from the telephone interview, and his own evidence unmistakably contradicts this argument. Because the article did indeed quote the complaint, we need not decide whether the privilege accorded the allegations in the complaint might extend to Kaplan's extrajudicial assertion of similar or identical allegations. *See* note 6. We thus intimate no view whether Wyatt would have a cause of action if he could show that Kaplan, in his interview with Mufson, accused him of "skimming off substantial amounts of profits". We hold only that for purposes of establishing publication in Texas, it is not enough to show that similar, or even identical, allegations from a privileged source were published there.[12]

■ We conclude that Wyatt has not made a *prima facie* case for the assertion of personal jurisdiction. Restricting our consideration to the evidence he submitted, we hold that he failed to discharge his burden of showing that some part of a tort occurred in Texas.[13] We now turn to the

11. The article did quote Kaplan as saying that he "didn't like what was going on", and Wyatt argues that this statement was also defamatory. He did not quote this statement in his complaint, however, and to the extent he may assert it as a basis for relief, he has not stated a cause of action under the law of Texas, which Wyatt would apply, or that of New York, which the defendants suggest is applicable. *See Murray v. Harris*, Tex.Civ.App.1938, 112 S.W.2d 1091, 1094, *writ dism. w.o.j.*; *Catterson v. Caso*, E.D.N.Y.1979, 472 F.Supp. 833. In any case, the language in question would likely be treated as a nondefamatory statement of opinion in most jurisdictions, and we have been given no reason to believe the courts of Texas would treat it differently. *See Prosser* § 111 at 741–42; Restatement (Second) of Torts § 566 comments b & c, illustrations (1977).

12. It bears emphasis that in finding the quotation in the newspaper article to have originated in the complaint, we rely entirely on the irrefutable evidence to that effect. We are mindful of the possibility that other, similar cases could arise in which the evidence does not conclusively establish which of several possible sources an allegedly defamatory quotation is taken from. Our decision in this case does not imply a presumption favoring attribution to any particular source, privileged or otherwise, in cases where the actual source of quoted language is subject to a genuine factual dispute.

13. As an alternative basis for personal jurisdiction, Wyatt's complaint might be read loosely to allege that the defendants "engage in business" in Texas apart from the commission of any tort. On a motion to dismiss for lack of

question whether he was improperly denied the opportunity to develop evidence that might have required a different outcome.

## III.

Wyatt contends that the district court committed reversible error by dismissing his suit without permitting any discovery. Even if he did not make a *prima facie* case on the question of personal jurisdiction, he argues, discovery might have produced the necessary *prima facie* evidence, and the district court therefore erred in granting the defendants a protective order. It is unfair and illogical, according to Wyatt, to require that he shoulder the burden of coming forward with evidence of jurisdiction while denying him the opportunity to develop that evidence. Although Wyatt's arguments are persuasive as general propositions, they do not require reversal in this case, because the discovery Wyatt requested would not have produced evidence supporting his case on jurisdiction.

Discovery under the Federal Rules of Civil Procedure is broad in scope. *See* Fed. R.Civ.P. 26(b)(1); *id.* advisory committee note. Courts do not generally grant protective orders without a strong showing of "good cause". 4 J. Moore & J. Lucas, Moore's Federal Practice ¶ 26.69 at 26–494 to 26–495 (2d ed. 1982); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035 at 264–65 (1970). Orders prohibiting discovery by deposition are particularly disfavored. 8 *Wright & Miller* § 2037 at

272 (1970). When a defendant challenges personal jurisdiction, courts generally permit depositions confined to the issues raised in the motion to dismiss. *Id.*, § 2009 at 52–54; 4A *Moore's Federal Practice* ¶ 30.-53[5]. In an appropriate case, we will not hesitate to reverse a dismissal for lack of personal jurisdiction, on the ground that the plaintiff was improperly denied discovery. *E.g., Skidmore v. Syntex Laboratories*, 5 Cir. 1976, 529 F.2d 1244, 1248–49; *Littlejohn v. Shell Oil Co.*, 5 Cir. 1973, 483 F.2d 1140, 1143–46 (en banc), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743. When, as in this case, the jurisdictional question intertwines with the merits of the case, *see* p. 5, some discovery on the merits may be necessary, and general discovery may be permitted. 4 *Moore's Federal Practice* ¶ 26.70[2] at 26–520.[14]

The district court, however, has broad discretion in all discovery matters. *Stewart v. Winter*, 5 Cir. 1982, 669 F.2d 328, 331; *Pan-Islamic Trade Corp. v. Exxon Corp.*, 5 Cir. 1980, 632 F.2d 539, 550, *cert. denied*, 1981, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236. The decision not to permit depositions on a motion to dismiss for lack of personal jurisdiction is specifically one for the trial court's discretion, and "[s]uch discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse". *Associated Metals & Minerals Corp. v. S. S. Geert Howaldt*, 5 Cir. 1965, 348 F.2d 457, 459; *see also Lehigh Valley Industries, Inc. v. Birenbaum*, 2d Cir.

---

personal jurisdiction, the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits. *Black v. Acme Markets, Inc.*, 5 Cir. 1977, 564 F.2d 681, 683 n.3. The defendants, however, have submitted affidavits to the effect that their contacts with Texas have been extremely limited and do not relate to the present cause of action. Wyatt has introduced no evidence to the contrary. As we discuss in Part III of this opinion, Tex.Rev.Civ.Stat. art. 2031b (Vernon 1964) does not authorize the assertion of personal jurisdiction in a cause of action unrelated to the defendant's contacts with the forum.

14. Although Wyatt's arguments in this appeal address discovery of jurisdictional facts, he apparently sought general discovery in the district court, and it is not clear that he has now

abandoned that broader request. To the extent discovery on jurisdictional matters might be permitted where general discovery is not, the defendants point out that Wyatt did not specifically seek limited discovery in the district court. We cannot predicate reversal on the denial of discovery that was never sought. *See Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co.*, 5 Cir. 1972, 469 F.2d 416; *Associated Metals & Minerals Corp. v. S. S. Geert Howaldt*, 5 Cir. 1965, 348 F.2d 457. Wyatt argues that he obviously would have agreed to discovery limited to jurisdictional issues. We need not resolve this dispute, because the reasoning on which we rely in affirming the district court would apply even if Wyatt had specifically sought such limited discovery.

1975, 527 F.2d 87, 93–95. In the present case, the district court acted well within the boundaries of sound discretion.

 The scope of permissible discovery is limited by the requirement of relevance, although relevance is broadly defined in the context of discovery. It is not error to deny discovery when there is no issue of material fact. *Poirier v. Carson*, 5 Cir. 1976, 537 F.2d 823. Similarly, the court may decide the merits of a case before discovery is completed, if the material to be discovered would not "have contained evidence . . . or led to the discovery of evidence raising material questions of fact". *Citizens for a Better St. Clair County v. James*, 5 Cir. 1981, 648 F.2d 246, 252. Discovery on matters of personal jurisdiction, therefore, need not be permitted unless the motion to dismiss raises issues of fact. *See H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Laboratories*, 2 Cir. 1967, 384 F.2d 97 (per curiam). When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted. *See* 4 *Moore's Federal Practice* ¶ 26.69 at 26–504; Note, Discovery of Jurisdictional Facts, 59 Va.L.Rev. 533, 546 (1973). Accordingly, this Court affirms denials of discovery on questions of personal jurisdiction in cases where the discovery sought "could not have added any significant facts". *Washington v. Norton Manufacturing, Inc.*, 5 Cir. 1979, 588 F.2d 441, 447, *cert. denied*, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313.[15] This is such a case.

 Wyatt asserts two theories under which discovery might have helped him establish personal jurisdiction. He contends, first, that the requested depositions would have bolstered his position that Kaplan made the "skimming off" remark to Mufson,[16] and second, that discovery might have produced evidence of the defendants' additional contacts with Texas. The first argument, of course, relies on a premise we rejected in Part I of this opinion: even if discovery established that Kaplan made the remark, there is no evidence that it was published in Texas. Wyatt does not assert, and could not, plausibly, that discovery would produce evidence refuting the unmistakable purport of the newspaper article that the "skimming off" language came from the complaint rather than the interview. Wyatt's other argument is no more persuasive, because the existence, if established, of the defendants' additional contacts with Texas is irrelevant to the question of personal jurisdiction in this case.

The Texas Supreme Court has said that the state's long-arm statute, on which Wyatt relies, establishes personal jurisdiction to the full extent permitted by due process. *U-Anchor Advertising, Inc. v. Burt*, Tex. 1977, 553 S.W.2d 760, 762, *cert. denied*, 1978, 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763. And in some cases, those in which a nonresident defendant's contacts with the forum are "continuous and systematic", due process permits the assertion of personal jurisdiction on the basis of contacts unrelated to the cause of action. *Perkins v. Benguet Consolidated Mining Co.*, 1952, 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485; *see also Bankhead Enterprises,*

---

15. The *Washington* opinion stated that the discovery at issue "could not have added any significant facts *and would only have been expensive and burdensome for the nonresident corporation*". 588 F.2d 441 (emphasis added). The result in *Washington* did not, however, depend on any showing of expense or burdensomeness. The opinion does not suggest that discovery would have been especially burdensome or expensive in that case and the court was evidently alluding to the fact that discovery always entails some degree of cost and inconvenience. We understand the *Washington* opinion to hold that this cost and this inconvenience are not justified when they will be the *only* result of discovery.

16. Wyatt argues, in this connection, that a deposition of Mufson might have impeached his affidavit, in which he swore that Kaplan did not use this language. As the defendants point out, however, Wyatt did not notice the deposition of Mufson and cannot now complain of being denied the opportunity to depose him. *See Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co.*, 5 Cir. 1972, 469 F.2d 416. In any case, our discussion in the text establishes that the deposition of Mufson, if permitted, would be irrelevant on the theory Wyatt asserts.

*Inc. v. Norfolk and Western Railway Co.,* 5 Cir. 1981, 642 F.2d 802. But the Texas long-arm statute by its terms applies only in causes of action "arising out of" contacts with Texas. Tex.Rev.Stat.Ann. art. 2031b, § 3 (Vernon 1964). And this Court has recently given effect to this limitation, holding that article 2031b does not establish personal jurisdiction of a defendant who commits a tort entirely outside Texas, although he may otherwise be "doing business" in Texas within the meaning of article 2031b. *Prejean v. Sonatrach,* 5 Cir. 1981, 652 F.2d 1260, 1265–68; *see also Placid Investments, Ltd. v. Girard Trust Bank,* 5 Cir. 1981, 662 F.2d 1176. The *Prejean* opinion pointed out that the broad language of the Texas Supreme Court in *U-Anchor* "directly addressed only the meaning of 'doing business' in the context of whether it is coextensive with the constitutional confines of due process" and that the cause of action in that case in fact arose out of the defend-ant's contacts with Texas. *Id.* at 1265–66.[17] We are aware of no case in which a Texas court has held article 2031b applicable to a defendant whose contacts with Texas did not give rise to the cause of action, *see id.* at 1266 n.8, and at least one Texas appellate court has approved the requirement in dictum, *e.g., Siskind v. The Villa Foundation for Education,* Tex.App. 1981, 624 S.W.2d 803, 807, *writ granted.* Even if discovery established that the defendants in this case have additional, presently unknown, contacts with Texas, this showing would not avail in Wyatt's effort to bring the defendants within article 2031b.[18]

## CONCLUSION

Dismissal of this case for lack of personal jurisdiction was appropriate. The plaintiff relied on the Texas long-arm statute and the theory that the defendants committed torts with effects in Texas, but his own

---

**17.** The court in *U-Anchor* ultimately found that the defendant's contacts with Texas were insufficient to justify the assertion of personal jurisdiction under due process standards. 553 S.W.2d at 764.

**18.** Wyatt argues that discovery might have established additional defamatory statements by Kaplan to friends and clients in Texas. He relies on Kaplan's statement, in his deposition in the derivative suit, that after the newspaper article appeared, he discussed the case with "[f]riends, clients, relatives, my wife, my son, everybody [that asked me about it]". Kaplan Dep. 29–30. According to Wyatt, if discovery established that any of these friends and clients were in Texas, this would provide "a specific basis for personal jurisdiction" under article 2031b. Although such additional defamatory utterances would affect personal jurisdiction in an action arising from them, they are irrelevant here because they are not the Texas contacts out of which this defamation action arose. Wyatt's complaint unambiguously limits its allegations to statements Kaplan made to Mufson.

Wyatt also argues that Tex.Civ.Proc. Rules Ann.R. 108 (Vernon 1979) affords an additional basis for personal jurisdiction, independent of the special requirements of art. 2031b. Rule 108 sets out the procedures for serving notice on a nonresident defendant and provides that [a] defendant served with such notice shall be required to appear and answer in the same manner and time and under the same penalties as if he had been personally served with a citation within this state *to the full extent that he may be required to appear and answer under the Constitution of the United States in an action either in rem or in person-am.* Tex.Civ.Proc. Rules Ann.R. 108 (Vernon 1979) (emphasis added). According to Wyatt, this is not just a procedural rule but a separate long-arm statute establishing personal jurisdiction to the full extent permitted by due process. If this interpretation is correct, the defendants' contacts with Texas, though they did not give rise to the present cause of action, might afford a basis for personal jurisdiction, if those contacts were "continuous and systematic". Rule 108, however, does not have the force Wyatt ascribes to it. *Aamco Automatic Transmissions, Inc. v. Evans Advertising Agency, Inc.,* Tex.Civ.App.1970, 450 S.W.2d 769, 771. One Texas court has stated, in dictum, that "Rule 108 *may* be construed as a long-arm statute by which personal jurisdiction may be obtained...". *Fox v. Fox,* Tex.Civ.App.1977, 559 S.W.2d 407, 409 (emphasis added); *see also Grantham v. Aetna Life and Casualty,* N.D.Tex. 1978, 455 F.Supp. 440, 441. But no court has adopted this interpretation, and this Court has rejected it. *Placid Investments, Ltd. v. Girard Trust Bank,* 5 Cir. 1981, 662 F.2d 1176, 1179. The Texas courts having given us no reason to depart from our position that "a rule of procedure adopted by the Texas Supreme Court may not be used as an end-run around the substantive jurisdictional requirements enacted by the Texas Legislature", *id.,* we adhere to it.

evidence contradicted this theory. That evidence also established that the motion to dismiss entailed no dispute concerning material facts. Discovery would therefore not have advanced the plaintiff's position on the jurisdictional issue, and the district court did not abuse its discretion in disposing of the case without allowing the parties the benefits of discovery.

The order of the district court is AFFIRMED.