Opinion issued October 1,
2009

 

 

 

 

 

 



 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of
Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-01036-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JOHN AND NANCI LAMAR, Appellants

 

V.

 

ERIC PONCON AND MORGAN’S ROCK HACIENDA AND ECOLODGE,
Appellees

 

 



On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 2006-01572

 

 



O P I N I O N

          This is an appeal from
trial court orders refusing to allow jurisdictional discovery and granting the
defendants’ special appearances.  John and Nanci Lamar sued Eric Poncon and
Morgan’s Rock Hacienda and Ecolodge (Morgan’s Rock), a Nicaraguan corporation,
for its negligence in causing personal injuries arising out of a car accident
that allegedly occurred when the Morgan’s Rock driver fell asleep at the wheel
while driving the Lamars from the airport to the Morgan’s Rock resort in
Nicaragua.  After Morgan’s Rock and Poncon filed a special appearance, the
Lamars moved for jurisdictional discovery and twice amended their motions. 
Each time, the trial court denied jurisdictional discovery and in December
2008, granted the special appearances.  The Lamars appeal, contending that the
trial court erred in granting the special appearance and in denying their
requests for jurisdictional discovery.[1] 
We conclude that the Lamars have not established that the trial court has
personal jurisdiction, but the trial court erred in refusing to allow limited
jurisdictional discovery, which was reasonably calculated to lead to admissible
evidence on the matter.  We therefore reverse and remand the cause for further
proceedings.

Background

In August 2005, the Lamars traveled
to Morgan’s Rock resort in Nicaragua on vacation.  Nanci Lamar purchased and
arranged the trip through Austin travel agency Anderson Mill Travel Services
(Anderson Mill).  The trip the Lamars purchased included ground transportation
from the airport to the resort.  While driving the Lamars to the resort, the
driver of the vehicle fell asleep at the wheel, lost control, and crashed into
a tree.  The Lamars suffered serious injuries:  John sustained back and neck
injuries, a broken rib, and multiple lacerations, and Nanci suffered back
injuries, and a severe knee injury and a laceration near her eye and nose, both
of which required surgery to repair.  Medical personnel treated the Lamars in
Nicaragua and then flew them back to Houston to receive care at The Methodist
Hospital.  The Lamars sought payment of their medical bills from Morgan’s Rock,
and Morgan’s Rock refused. 

The Lamars then filed suit against
Anderson Mill, Morgan’s Rock, and Poncon in Texas state court.[2] 
It was over a year before the Lamars were able to serve process on Poncon and
Morgan’s Rock.[3] 
Poncon and Morgan’s Rock specially appeared, supported by the affidavit of
Poncon, a French citizen and the president of the Nicaraguan corporation that
owns Morgan’s Rock.  Poncon and his family members are the sole shareholders of
that corporation.  Poncon averred that neither Morgan’s Rock nor Poncon
maintain an address in the United States, have employees in the United States,
advertises in the United States, owns or leases property in the United States,
or has a bank account here.  He further averred that Morgan’s Rock does not
conduct any business or operations in Texas through a business subsidiary,
affiliate company, joint venture, or agent or independent contractor, and
Morgan’s Rock has never entered into any contracts in Texas.  According to
Poncon, Morgan’s Rock does not produce any advertising or printed materials for
distribution in the United States or Texas and does not maintain a toll-free
telephone number or United States telephone number to receive United States
phone calls.  Poncon acknowledged, however, that United States guests come to
the hotel, frequently booking their trips through United States travel agents. 
According to Poncon, Morgan’s Rock pays a fee to any travel agent who books a
hotel guest, but it does not have an ownership interest in any United States
travel agency.

In July 2007, the Lamars moved for
jurisdictional discovery, requesting leave to depose Eric Poncon and a
corporate representative for Morgan’s Rock, and to serve interrogatories,
requests for production, and requests for admission, in an effort to establish
that Morgan’s Rock is subject to jurisdiction in Texas.  The Lamars attached
the affidavit of their attorney Kurt Arnold, averring that the Lamars used all
avenues available for discovering Morgan’s Rock’s contacts with Texas other
than direct discovery from Morgan’s Rock, and that discovery was the only
method possible for determining Poncon and Morgan’s Rock’s specific and general
contacts with Texas.  At the same time, the Lamars served written discovery
requests and notices of depositions on Poncon and the corporate representative
of Morgan’s Rock.  The Lamars stipulated that their counsel would travel to
Nicaragua for any jurisdictional depositions the trial court allowed.

Morgan’s Rock moved to quash the
depositions and refused to respond to written discovery, complaining that
Arnold’s affidavit was insufficient under Texas Rule of Civil Procedure 120a(3)
because it did not establish the steps that the Lamars had taken to justify
their need for written discovery.  See Tex.
R. Civ. P. 120a(3).  After a hearing, the trial court quashed the
depositions, and refused to allow the written discovery.

In November 2007, the Lamars amended
their motion for jurisdictional discovery, attaching additional affidavits. 
Caj Boatwright, another of the Lamars’ attorneys, described the resources used
by his firm in attempting to determine Morgan’s Rock’s contacts with Texas, specifically internet databases such as Westlaw, Accuring, Yahoo! People Finder, and
PACER.  Boatwright averred that these databases cannot show whether Poncon or
another Morgan’s Rock representative has traveled to Texas, and do not contain
contracts that might have been signed, negotiated or entered into in Texas. 
Furthermore, these databases do not allow the Lamars to cross-examine Poncon on
the statements in his affidavit.  Nanci Lamar averred that she was unaware of
the extent of Morgan’s Rock’s contacts in Texas, but that she understood that
Morgan’s Rock worked with Anderson Mill to book trips for Texans to the
resort.  Finally, Arnold executed another affidavit similar to Boatwright’s in
which he described the search terms he used when searching additional internet
databases in an attempt to uncover Morgan’s Rock’s contacts in Texas.  The
trial court again heard and denied the Lamars’ motions.

In February 2008, the Lamars again
amended their motion for jurisdictional discovery.  This time, the Lamars
included two additional affidavits along with the previously included
affidavits of Arnold, Boatwright, and Lamar.  Boatwright executed one of these
additional affidavits, again describing his efforts to search internet
databases for Morgan’s Rock and Poncon’s Texas contacts.  Boatwright also
averred that the Lamars sought the dates that Poncon or another Morgan’s Rock
representative traveled to Texas on business, copies of contracts or business
agreements executed in Texas, letters, phone calls, emails, and other
communications directed to Texas for business purposes, all of which the Lamars
expected jurisdictional discovery to show.  Further, Boatwright reiterated the
Lamars’ desire to cross-examine Poncon on his affidavit supporting his special
appearance.  The Lamars also included a new affidavit from Kevin Pipkins, a
private investigator they hired to investigate Morgan’s Rock and Poncon’s
contacts with Texas.  Pipkins averred that it is difficult to determine a
foreign corporation’s business contacts with Texas because no method exists for
searching contracts, transactions, investments, and communications made with
Texas, and most foreign corporations have no property in Texas and are not
registered to do business in Texas, even if they have extensive contacts.  He
averred that he had used all known internet, financial, and property resources
to try to establish Morgan’s Rock and Poncon’s contacts to Texas.  The Lamars
again attached written discovery requests to their motion.  The trial court
held another hearing, where it noted that nothing in the Lamars’ attached
affidavits contradicted the statements in Poncon’s affidavit attached to his
special appearance.  On this basis, the trial court again quashed both the written
requests for discovery and depositions.

Ultimately, the Lamars responded to
Morgan’s Rock and Poncon’s special appearance, alleging that Morgan’s Rock is
subject to general jurisdiction because it has continuous and systematic
contacts with Texas based on its relationship with Anderson Mill and that it is
subject to specific jurisdiction because the Lamars’ cause of action arose out
of Morgan’s Rock’s relationship with Anderson Mill.  In support of their
response, the Lamars included the deposition of Leigh Ann Cloutier, the
president of Anderson Mill, which describes Anderson Mill’s contacts with
Morgan’s Rock, the affidavit of Tom Stanley, an expert in international tour
operations and travel industry standards, regarding his analysis of those same
contacts, and the affidavit of Nanci Lamar.  According to Stanley’s affidavit,
the documents produced to him by Anderson Mill indicated that in Morgan’s
Rock’s first year of operation, when the Lamars visited, Anderson Mill provided
approximately 100 clients to Morgan’s Rock, which Stanley estimated accounted
for ten to nineteen percent of Morgan’s Rock’s total bookings made by travel
agents worldwide and Morgan’s Rock’s reservations staff.  Nanci Lamar stated in
her affidavit that she understood from her conversations with Anderson Mill
that the travel agent and Morgan’s Rock worked together to book trips for
Texans to the resort and to provide all requisite services, including
transportation.

Cloutier testified that Anderson Mill
booked a significant number of travelers on trips to Morgan’s Rock in the first
year.  Cloutier estimated that she sent one hundred clients to Morgan’s Rock. 
Each trip cost an estimated two thousand dollars, thus resulting in an estimated
two hundred thousand dollars overall, of which Morgan’s Rock receives a
significant portion.  Cloutier agreed that Anderson Mill regularly communicates
with employees of Morgan’s Rock in the booking process.  Anderson Mill received
media CDs and brochures from Morgan’s Rock at a trade show, which Anderson Mill
uses in marketing the resort.  Additionally, Morgan’s Rock provided Cloutier
with three free stays at the resort in order for her to inspect the property so
that she can recommend it to her Texas clients.  Cloutier did not know whether
any other travel agents in Texas also booked vacations with Morgan’s Rock.

The trial court sustained Morgan’s
Rock and Poncon’s special appearance in December 2008.  The Lamars appeal,
alleging that (1) the trial court should have granted jurisdictional discovery,
in particular to test the statements Morgan’s Rock proffered via Poncon’s
affidavit, and (2) the Lamars nevertheless established that Morgan’s Rock is
subject to personal jurisdiction in Texas, making the trial court’s granting of
the special appearance improper.

Discussion

          Special appearances are
governed by Rule 120a, which provides that “a special appearance may be made by
any party . . . for the purpose of objecting to the jurisdiction of
the court over the person or property of the defendant on the ground that such
party or property is not amenable to process by the courts of this State.”  Tex. R. Civ. P. 120a.

          On appeal, we review de
novo the trial court's determination to grant or deny a special
appearance.  Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d
801, 806 (Tex. 2002).  The plaintiff bears the initial burden of pleading
sufficient allegations to bring a nonresident defendant within the provisions
of the Texas long-arm statute. BMC Software Belg., N.V. v. Marchand, 83
S.W.3d 789, 793 (Tex. 2002).  A nonresident defendant challenging the court's
exercise of personal jurisdiction carries the burden of negating all grounds
for personal jurisdiction alleged by the plaintiff.  Id.; Glattly v.
CMS Viron Corp., 177 S.W.3d 438, 446 (Tex. App.—Houston [1st Dist.] 2005,
no pet.).  We review all evidence in the record to determine if the nonresident
defendant met this burden.  N803RA, Inc. v. Hammer, 11 S.W.3d 363, 366 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing Gen. Elec. Co v. Brown & Ross
Int’l Distribs., Inc., 804 S.W.2d 527, 529–30 (Tex. App.—Houston [1st
Dist.] 1990, writ denied)).

Once the parties join the
jurisdictional issue, the Texas long-arm statute must authorize the exercise of
jurisdiction, and the exercise of jurisdiction must be consistent with the
guarantees of due process.  Coleman, 83 S.W.3d at 806; Tri-State
Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P., 184 S.W.3d 242, 248 (Tex.
App.—Houston [1st Dist.] 2005, no pet.).  The Texas long-arm statute provides
that a nonresident does business in Texas if it contracts by mail or otherwise
with a Texas resident and either party is to perform the contract in whole or
in part in Texas.  Tex. Civ. Prac. &
Rem. Code Ann. § 17.042(1) (Vernon 2008).

Federal due process requires two
things.  First, the nonresident defendant must have purposefully established
such minimum contacts with the forum state that the defendant could reasonably
anticipate being sued in that state.  Glattly, 177 S.W.3d at 446 (citing
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76, 105 S.Ct. 2174,
2183–84 (1985)).  The relevant inquiry is whether the nonresident defendant
purposefully avails itself of the privilege of conducting activities within the
forum state, thus invoking the benefits and protections of its laws.  Moki
Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575 (Tex. 2007) (citing Hanson
v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958)).  If the
nonresident defendant has purposefully established minimum contacts with the
forum, the exercise of personal jurisdiction must also comport with traditional
notions of fair play and substantial justice.  Glattly, 177 S.W.3d at 447
(citing Burger King, 471 U.S. at 476, 105 S.Ct. at 2184).  Only in rare
cases, however, will a Texas court's exercise of personal jurisdiction not
comport with fair play and substantial justice if the nonresident defendant has
purposefully established minimum contacts with Texas.  Guardian Royal Exch.
Assur., Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 231 (Tex.
1991).

There are three parts to a purposeful
availment inquiry.  Michiana Easy Livin’ Country, Inc. v. Holten, 168
S.W.3d 777, 785 (Tex. 2005).  First, only the defendant’s contacts with the
forum are relevant, not the unilateral activity of another party or a third
person.  Id.  Second, the contacts relied upon must be purposeful rather
than random, fortuitous, or attenuated.  Id.  Thus, a seller who reaches
out and creates continuing relationships and obligations with citizens of
another state is subject to the jurisdiction of that state based on his or her
activities.  Id.  Finally, the defendant must seek a benefit, advantage,
or profit by availing itself to the jurisdiction.  Id.  Conversely, it
is possible for a defendant to purposefully avoid a particular forum by
structuring its transactions so as to neither profit from the forum’s laws nor
subject itself to its jurisdiction.  See Burger King, 471 U.S. at 472,
105 S.Ct. at 2184 (quoting World-Wide Volkswagon Corp. v. Woodson, 444
U.S. 286, 297 (1980)).

Two types of personal jurisdiction
may arise from a nonresident defendant’s contacts with the forum state.  BMC
Software, 83 S.W.3d at 795–96.  If the defendant made continuous and
systematic contacts with the forum, general jurisdiction is established
regardless of whether the defendant’s alleged liability arises from those
contacts.  Id. at 796.  Specific jurisdiction, on the other hand,
requires analysis of the relationship among the defendant, the forum, and the
litigation.  Moki Mac, 221 S.W.3d at 575–76 (citing Guardian Royal,
815 S.W.2d at 228).  Specific jurisdiction exists if the defendant’s alleged
liability arises out of or is related to an activity located within the forum. 
 Id. at 576 (citing Helicopteros Nacionales de Colombia v. Hall,
466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 1872 (1984)).

A.  Specific Jurisdiction

In Moki Mac, the plaintiffs’
son, a Texas resident, died in an accident while on a hiking and river rafting
trip in Arizona.  Id.  Moki Mac, the Utah-based company that coordinated
the trip, intentionally solicited business in Texas through the following:
regular national and local media advertisements; a mass and targeted
direct-marketing email campaign; a mailing list; using particular customers in
the Texas market as “group leaders” to plan, organize, and promote its trips;
certain complimentary benefits as incentives to customers to book a trip; and
the use of a travel agent in Houston, for which Moki Mac paid a fee.  Id. at 577–78.  Evidence existed that, in the previous five years, between seven and
eleven percent of Moki Mac’s customers were Texas residents.  Id. at
579.  The Texas Supreme Court held that Moki Mac’s business with Texas residents stemmed from its marketing and advertising activities purposefully directed
at gaining Texas customers, thus doing business in Texas.  Id.

Nevertheless, the court concluded
that the plaintiffs had not established specific jurisdiction over Moki Mac in Texas.  Purposeful availment alone will not support the exercise of specific jurisdiction. 
Id.  For specific jurisdiction, purposeful availment is only relevant if
the defendant’s liability arises from or relates to the forum contacts.  Id. 
In Moki Mac, the court held that there must be a substantial connection
between the defendant’s forum contacts and the operative facts of the
litigation.  Id. at 585.  The plaintiff alleged that her son’s death
arose out of Moki Mac’s conduct because she was induced to send her son on the
trip by the assurances of safety in Moki Mac’s brochures.  Id.  The
plaintiffs argued that, but for these assurances, they would not have sent
their son on the rafting trip, and he would not have died on the hiking trail. 
Id.  The Texas Supreme Court observed that the operative facts of the
lawsuit primarily concerned the Moki Mac employees’ conduct of the hiking
expedition and whether they exercised reasonable care in supervising the
plaintiffs’ son.  Id.  Thus, the court held that the alleged
misrepresentation was not the subject matter of the case or related to the
operative facts of the negligence action, making the assurances in the
promotional materials too attenuated to establish specific jurisdiction.  Id.

Applying the court’s analysis in
Moki Mac here, the Lamars cannot establish specific jurisdiction over
Morgan’s Rock in Texas.  Much like the plaintiffs in Moki Mac, the
Lamars allege that the accident arose out of Morgan’s Rock’s contacts with
Texas, and the assurances that their travel from the airport to Morgan’s Rock
would be safe.  The assurances here, however, are even more attenuated than in Moki
Mac, as Anderson Mill, not Morgan’s Rock, allegedly assured Nanci Lamar
that their car travel would be safe.  Thus, Morgan’s Rock’s alleged contacts
with Texas are not related to the operative facts of their negligence action
against Morgan’s Rock, and specific jurisdiction does not exist.  But the
answer to the jurisdiction inquiry is incomplete—we must also examine general
jurisdiction.  The Texas Supreme Court’s analysis in Moki Mac is again
instructive:  noting the general contacts the defendant had with the forum, the
court remanded the case for consideration of whether Moki Mac was subject to
general jurisdiction in Texas.  Id. at 588.

B.     General Jurisdiction

General jurisdiction is personal
jurisdiction over a defendant which does not arise out of or relate to the
defendant’s contacts with the forum.  PHC-Minden, L.P. v. Kimberly-Clark
Corp., 235 S.W.3d 163, 167 (Tex. 2007).  General jurisdiction is based
solely on the defendant’s continuous and systematic contacts with the forum.  Id. at 169.  A general jurisdiction inquiry requires a more demanding minimum
contacts analysis than a specific jurisdiction inquiry.  Id. at 168. 
General jurisdiction requires that the defendant be engaged in a longstanding
business in the forum state, such as marketing or shipping products, performing
services, or maintaining one or more offices there.  Id.

          In Minden, the Texas
Supreme Court analyzed whether a Louisiana hospital’s contacts with Texas were
sufficient for supporting general jurisdiction.  The hospital’s only facility
was located in Minden, Louisiana, and it did not advertise or own property in
Texas, nor did it have a Texas office, bank account, or registered agent for
service of process.  Id. at 170.  The plaintiffs relied on two isolated
trips by employees traveling to Texas for seminars, Minden’s purchases from
Texas vendors, and three contracts with Texas entities to support general
jurisdiction.  Id.  The Texas Supreme Court relied on the United States
Supreme Court’s holding in Helicopteros to conclude that the hospital’s
limited contacts with Texas were insufficient to support general jurisdiction because
the Helicopteros Court had held that (1) multiple trips to Fort Worth
did not support general jurisdiction because the trips did not enhance the
company’s contacts with Texas; and (2) mere purchases are not enough to support
general jurisdiction if the cause of action is not related to those purchase
transactions.  Id. at 170–71 (citing Helicopteros, 466 U.S. at
418, 104 S.Ct. at 1868).  Additionally, the Texas Supreme Court concluded that
the hospital’s contracts with Texas companies were “sporadic,” not continuous
and systematic.  Id. at 171.

          Here, the Lamars did not
prove that Morgan’s Rock and Poncon engaged in continuous and systematic
contacts with Texas.  That inability, however, may be attributed to the fact
that Morgan’s Rock refused to participate in even written jurisdictional
discovery.

          C.  Jurisdictional
Discovery 

Jurisdictional discovery is governed
by Rule 120a(3) of the Texas Rules of Civil Procedure.  Rule 120a(3) provides
that a trial court may order a continuance to permit discovery to be had or
depositions to be taken, or make any other order as is just, where it appears
from the affidavits of a party opposing a special appearance that he cannot,
for reasons stated in the affidavit, present facts essential to justify his
opposition to the special appearance.  Tex.
R. Civ. P. 120a(3).  Here, the Lamars moved three times for
jurisdictional discovery, attaching affidavits to their motions each time.  We
review the trial court’s denial of jurisdictional discovery for an abuse of
discretion.  Barron v. Vanier, 190 S.W.3d 841, 847 (Tex. App.—Fort Worth
2006, no pet.) (citing BMC Software, 83 S.W.3d at 800).  Jurisdictional
discovery “can be a vital part of resolving a special appearance.”  Exito
Elecs. Co. v. Trejo, 142 S.W.3d 302, 307 (Tex. 2004).

Morgan’s Rock refused to participate
in jurisdictional discovery because, it alleged, the affidavits attached to the
Lamars’ motions were insufficient to support jurisdictional discovery.   Barron
addressed the requirements of affidavits supporting a motion for
jurisdictional discovery.  190 S.W.3d at 848–50.  There, the Fort Worth Court
of Appeals explained that jurisdictional discovery should seek evidence
supporting jurisdiction over the case, or it is unnecessary.  See id. at
848 (citing Wyatt v. Kaplan, 686 F.2d 276, 283 (5th Cir. 1982)).  The
plaintiff in Barron attached a list of information he sought to obtain
through jurisdictional discovery, including information about the defendants’
business dealings in Texas, communications with Texas residents, advertising in
Texas, Texas clients, mail, electronic, and telephone communications with
Texas, travels to Texas, and information from one of the defendants regarding a
portion of his affidavit.  Id. at 849.  The court granted jurisdictional
discovery because it was possible that at least some of these categories would
relate to personal jurisdiction.  Id.; see also El-Fadl v. Cent. Bank
of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996) (“Even though El-Fadl’s
present jurisdictional allegations are insufficient, he has sufficiently
demonstrated that it is possible that he could supplement them through discovery.”);
Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC, 148 F.3d 1080,
1090 (D.C. Cir. 1998) (“[I]n order to get jurisdictional discovery a plaintiff
must have at least a good faith belief that such discovery will enable it to
show that the court has personal jurisdiction over the defendants.”).

Similar to the defendant in Barron,
Poncon averred in his affidavit that Morgan’s Rock does not have an office or
bank account in Texas, does not produce any advertising or printed materials
for distribution in the United States, and has never entered into any contracts
in Texas.  Morgan’s Rock contends that none of the affidavits produced by the
Lamars in their efforts to gain jurisdictional discovery are sufficient because
they do not directly contradict Poncon’s affidavit.  Cloutier’s testimony,
however, suggests that, at the very least, Morgan’s Rock developed brochures
and media CDs that it gave to Anderson Mill for use in promoting Morgan’s Rock
in Texas, and that Morgan’s Rock derived a significant amount of business from
Texas clients directed through its marketing efforts with Anderson Mill.  In
addition, the Lamars contend that Morgan’s Rock markets to Texas clients
through an interactive website.  The list of information the Lamars sought in
jurisdictional discovery includes times Poncon or a Morgan’s Rock
representative traveled to Texas on business, copies of contracts or business
agreements executed in Texas, and letters, phone calls, emails, and other
communications directed to Texas for business purposes.  Additionally, the
Lamars asked to cross-examine Poncon on the statements in his affidavit in
light of Cloutier’s testimony.  Essentially, the Lamars sought to establish the
degree to which Poncon and Morgan’s Rock may solicit and conduct business in Texas
in ways that are not easily investigated without procuring information directly
from Poncon and Morgan’s Rock.  Given that the Texas Supreme Court in Moki
Mac remanded the case for consideration of general jurisdiction where the
plaintiffs established extensive business contacts with Texas, we conclude that
the Lamars should have the opportunity to conduct discovery to determine if
Poncon and Morgan’s Rock have similar contacts.  Thus, we hold that the trial
court abused its discretion in denying jurisdictional discovery.

Conclusion

We affirm the trial court’s
determination that Poncon and Morgan’s Rock are not subject to specific
jurisdiction in this case, but the trial court erred in denying jurisdictional
discovery.  The discovery sought could lead to admissible evidence on the issue
of general personal jurisdiction.  Thus, we reverse the trial court’s order
granting the special appearance, and remand the case for further proceedings.

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice Radack
and Justices Bland and Massengale.









[1] In January 2009, the Lamars filed a motion for new
trial, hoping that the new trial judge who had just taken office would
reconsider the previous trial judge’s grant of the special appearance.  In
February 2009, the trial court stayed the motion for new trial at Morgan’s
Rock’s request, and allowed the Lamars’ interlocutory appeal to proceed.





[2] Anderson Mill settled the claim against it.





[3] Nicaragua is not a signatory to the Hague Convention,
making service on the Morgan’s Rock defendants difficult.  The Lamars served
Eric Poncon when he attended a conference in New York.