COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-045-CV

 

 

J. ALAN BARRON                                                                APPELLANT

 

                                                   V.

 

GARY VANIER AND MARK GOLDOWITZ,                                 APPELLEES

INDIVIDUALLY AND D/B/A
THE 

CALIFORNIA
ANTI-SLAPP PROJECT                                                        

 

                                              ------------

 

            FROM THE 415TH
DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

 

                                OPINION ON REHEARING

 

                                              ------------








On March 2, 2006, this Court issued an opinion
reversing the trial court=s orders and remanding the case
to permit additional discovery and for further proceedings.  Appellee, Mark Goldowitz, individually and
doing business as the California Anti-SLAPP Project (Goldowitz), filed a motion
for rehearing.  After due consideration,
we deny Goldowitz=s motion for rehearing, but we
withdraw our opinion and judgment dated March 2, 2006, and issue this opinion
and judgment in their stead.  The
disposition, however, remains unchanged.

I.  Facts
and Procedural History

J. Alan Barron, a Texas resident, is the chief
operations officer of First Cash Financial Services (FCFS), a public company
listed on the NASDAQ national market system. 
FCFS is a Delaware corporation with its principal place of business,
including its administrative and executive offices, in Arlington, Texas. Blake
Miraglia and Gary Vanier, California residents, owned shares of stock in
Miraglia, Inc., a California corporation. 
Vanier and Miraglia were two of only seven shareholders.  Barron alleged, and Vanier did not contest,
that Miraglia and Vanier Aowned and controlled a majority
interest@ in
Miraglia, Inc.  Miraglia, Inc. had at
least eleven Texas customers.  Miraglia,
Vanier, and the other shareholders sold Miraglia, Inc. to FCFS on June 4, 1998,
pursuant to an Asset and Stock Purchase Agreement (the Agreement), and in
exchange received $21 million in cash, notes, and common stock.  Following the transaction, Miraglia and
Vanier=s
combined holdings in FCFS totaled almost 8% of FCFS=s issued
and outstanding shares.  In addition,
Miraglia agreed that Miraglia, Inc.=s
principal offices would be moved to Arlington, Texas.








The Agreement contained an anti-dilution
provision.  Miraglia, who had become an
officer of FCFS as part of the Agreement, believed that he was entitled to an
increasing number of warrants and stock options based on this provision and the
distribution of warrants and options to other FCFS officers and directors.  There is no evidence that Vanier was entitled
to warrants under the Agreement.  When
FCFS denied him additional warrants, Miraglia quit his job and filed suit
against FCFS.  Vanier was not a party to
this suit but allegedly helped fund it because Miraglia promised to share the
warrants, if obtained, with Vanier and other former shareholders of Miraglia,
Inc.  Miraglia and Vanier began posting
allegedly false and defamatory comments about FCFS on a Yahoo! finance message
board from spring to early July 2003. 
Randy York, a disgruntled former FCFS employee residing in Gregg County,
Texas, also began posting similar comments. 
Miraglia, Vanier, and York all used pseudonyms rather than posting under
their names.








FCFS filed suit in Tarrant County to determine
the identities of these posters and cause a subpoena to be issued by a
California court to non-party Yahoo!. 
When Yahoo! notified York that it would identify him, he contacted
Goldowitz, a California attorney doing business as the California Anti-SLAPP
Project, to help him quash the subpoena. 
California Code of Civil Procedure Section 425.16 protects against AStrategic
Lawsuits Against Public Participation@
(SLAPPs).[1]  The California legislature enacted the
anti-SLAPP statute to prevent and deter lawsuits (SLAPPs) Abrought
primarily to chill the valid exercise of the constitutional rights of freedom
of speech and petition for the redress of grievances.@[2]  Because the legislature sought to prevent
SLAPPs by ending them early and without great cost to the SLAPP target, section
425.16 establishes a procedure whereby the trial court evaluates the merits of
the lawsuit using a summary-judgment‑like procedure at an early stage of
the litigation.[3]  Thus, under California law, alleged digital
defamers may receive protection by this anti-SLAPP statute.  As admitted by Barron, this California
legislation is much more lenient on alleged defamers, and Texas has not adopted
similar protections. 








Goldowitz agreed to represent York in the
proceeding on the motion to quash. 
Goldowitz collaborated with York on a posting to the message board dated
September 8, 2003.  This posting referred
to and allegedly reaffirmed York=s prior
statements about FCFS and its management, and it directed readers to contact
the Anti-SLAPP project if they too were faced with potential disclosure of
their identities.  As a result, Vanier
contacted Goldowitz to represent him to prevent disclosure of his identity by
Yahoo!, but Goldowitz refused to represent him.

In the proceeding on York=s motion
to quash, the California court held that Barron could obtain York=s
identity.  Before Barron actually
received relevant records from Yahoo!, Vanier filed his own motion for
protection. Following another set of hearings on this motion, Barron prevailed
against Vanier as well.  A deposition of
York further confirmed the identities of both Vanier and York.

On August 26, 2003, Barron filed a defamation
suit against Miraglia in Parker County, Texas. 
On April 20, 2004, Barron filed his first amended original petition in
Parker County, Texas, adding defamation claims against Vanier, York, Goldowitz,
and Anti-SLAPP.  Barron claimed that they
had impeached his honesty and hurt the company=s
reputation through allegations of, among other things, insider trading and
illegal self-dealing.








On May 17, 2004, Vanier and Miraglia filed a
notice of removal, in which Goldowitz joined, attempting to remove the case to
federal court.  However, on August 30,
2004, the federal court signed a judgment remanding the case to the trial
court, rejecting the movants= theory
that York, the Texas resident, was fraudulently joined.  The trial court did not regain jurisdiction
over the case until October 2004, when a certified copy of the order of remand
was filed there.  Goldowitz, Vanier, and
Miraglia filed special appearances in that month.  Vanier subsequently filed an amended special
appearance on December 1, 2004.      The
hearing on the special appearances was originally set for November 9,
2004.  On November 4, 2004, Barron filed
a motion for continuance.  Due to
scheduling conflicts of Barron=s
attorneys, the parties filed an agreement on November 17, 2004, resetting the
special appearance hearing to December 21, 2004.








On November 10, 2004, Barron served Vanier and
Goldowitz with requests for production and requests for disclosure.  On November 15, 2004, Barron served them with
notices of deposition.  Goldowitz and
Vanier both filed motions to quash the notice of deposition.  Also on November 29, 2004, Vanier served his objections
and responses to the requests for production. 
On December 1, 2004, Vanier agreed that he would produce responsive
documents in his possession by December 8, 2004, if Barron agreed to keep
confidential his finances and other personal information.  In addition, Vanier=s
attorney made several offers to present Vanier for deposition in
California.  Barron filed responses to
the special appearances on December 14, 2004. 
On December 16, 2004, Barron twice amended his motion for
continuance.  In the motion, Barron
sought to conduct discovery regarding jurisdiction so that he could respond to
Goldowitz=s, Vanier=s, and
Miraglia=s
special appearances.  He stated that he
believed that he would be able to discover information regarding their contacts
with Texas, their business dealings in Texas, and torts they committed against
Texas residents.  Specifically, he
sought, among other things, information regarding Goldowitz=s Aengagement@ on
behalf of York, Vanier=s and Goldowitz=s
communications with York and other Texas residents, their advertising in Texas,
their travel to and property in Texas, and information about their Texas
clients.  He also requested a privilege
log, to which Vanier and Goldowitz objected.

The trial court heard the special appearances and
the amended motion for continuance on December 21, 2004.  On January 3, 2005, the trial court wrote a
letter stating, in part, that the special appearances of Vanier and Goldowitz
were sustained.  On January 10, 2005, the
trial court signed orders denying Barron=s motion
for continuance and granting Vanier=s and
Goldowitz=s special appearance.  The court denied Milagria=s
special appearance, which Milagria does not challenge.  Barron filed a notice of this interlocutory
appeal on January 31, 2005.








On appeal, Barron asserts that the trial court
erred 1) by granting Vanier=s
special appearance, 2) by granting Goldowitz=s
special appearance, and 3) by denying his request for a continuance to permit
him further discovery or to make any other order to allow him to garner his
evidence establishing personal jurisdiction. 
Vanier and Goldowitz respond separately to these issues and also argue
that Barron=s failure to file a notice of
appeal within twenty days after the trial court sustained their special
appearances resulted in this court=s lack
of jurisdiction over the appeal.

II.  Legal
Analysis

A.  This
Court=s Jurisdiction








We must first decide if we have jurisdiction to
hear this appeal.  Vanier and Goldowitz
argue that Barron failed to timely file a notice of appeal.  A trial court=s order
granting a special appearance is an interlocutory, appealable order.[4]  Such appeals are accelerated.[5]  A notice of appeal in an accelerated appeal
case must be filed within twenty days after the judgment or order is signed.[6]  Here, the trial court judge wrote a letter on
January 3, 2005, stating in part that A[t]he
special appearances of [Vanier and Goldowitz] are sustained.@  The letter recited the parties= names
and the cause number and contained the judge=s and
court=s
headings.  On January 10, 2005, the trial
court judge signed separate orders sustaining the special appearances of Vanier
and Goldowitz.  Barron filed his notice
of appeal on January 31, 2005. 

Vanier and Goldowitz concede that Barron filed
his notice of appeal within twenty days of the trial court judge=s
signing the January 10, 2005 orders. 
However, they argue that the letter itself may have constituted the
trial judge=s order on their special
appearances and that Barron did not file his notice of appeal within twenty
days of this letter.








In the Texas Supreme Court=s Goff
v. Tuchscherer, a letter from the judge to counsel indicated that a plea of
privilege had been overruled.[7]  Approximately three weeks later, the judge
signed a final order overruling the plea.[8]  The court stated that A[l]etters
to counsel are not the kind of documents that constitute a judgment,
decision[,] or order from which an appeal may be taken@ and
held that A[t]he time from which one counts
days for the appellate steps is that day on which the judge reduces to writing
the judgment, decision or order that is the official, formal and authentic
adjudication of the court upon the respective rights and claims of the parties.@[9]  In Schaeffer Homes, Inc. v. Esterak,
the El Paso court cited and distinguished the facts of its case from the facts
of the Goff case.[10]  There, the judge wrote a letter ruling
on a motion for new trial.[11]  The court emphasized the precise language of
the judge=s letter, stating that Athe
letter did not express an intent yet to be effectuated, e.g. >I am
going to grant a new trial.=  The letter state[d] a >new
trial is granted.=@[12]  The letter was signed, dated, and filed, and
the court noted that there was no draft, directive, or subsequent order
evidencing that the letter was not considered by the judge to have operative
effect.[13]  Distinguishing Goff, the Schaeffer
Homes court stated:

[In Goff], a
November 5, 1980 letter from the judge to counsel indicated that a plea of
privilege had been overruled.  The letter
was not filed, and on November 26, 1980, a final order overruling the plea was
signed and filed.  The non‑filing
of the letter and the later entry of a formal order reflects that the trial
judge did not intend the earlier letter to serve as an entered order.








The letter in the present case
recites that the new trial is granted. 
The letter was filed with the district clerk the next day.  There is no draft, directive or subsequent
order evidencing that the April 25 letter was not considered by the judge to be
the operative order itself.  In content,
the letter substantially complies with all the requisites of formal entry of
the decision rendered.  It is dated.  It is signed. 
It identifies the parties and the trial court cause number . . . .
Evidencing a decision actually rendered, describing such decision with
certainty as to parties and effect, and publicly announcing entry of such
decision by prompt filing, we consider this April 25, 1990 letter to possess
all the necessary attributes of an order.[14]

In our case, the judge=s letter
uses present language and does not state an intent to be effectuated in the
future.  In addition, it is signed,
dated, and states the cause number and parties=
names.  However, the letter does not
appear to have been filed in the clerk=s
record.  Although it was included in the
appellate record, it was not file stamped, and the parties admitted in oral
argument that it was not filed.  In
addition, a formal order was later entered and filed.  We hold that the letter did not constitute
the order by which to begin measuring the twenty days.  Rather, the formal order signed on January
10, 2005, is the order from which Barron had twenty days to file his notice of
appeal.  He filed his notice of appeal
within twenty days of this date, and therefore this court has jurisdiction to
hear the appeal.

                            B.  Barron=s Motion
for Continuance

In his third issue, Barron argues in part that
the trial court erred by denying his request for a continuance to permit him
further discovery or to make any other order as is just to allow him to garner
his evidence establishing personal jurisdiction.  We agree.








1. 
Standard of Review








Texas Rule of Civil Procedure 120a(3) permits a
trial court to order continuance of a special appearance hearing to permit
further discovery A[s]hould it appear from the
affidavits of the party opposing the motion that he cannot for reasons stated
present by affidavit essential facts to justify his opposition.@[15]  The trial court=s denial
of a continuance will not be disturbed absent a clear abuse of discretion, and A[t]he
record should clearly show that the trial court has disregarded a party=s rights
before reversing the trial court=s
ruling.@[16]  We are to consider whether the trial court
abused its discretion on a case‑by‑case basis.[17]  The Texas Supreme Court has considered the
following nonexclusive factors when deciding whether a trial court abused its
discretion by denying a motion for continuance seeking additional time to
conduct discovery:  the length of time
the case has been on file, the materiality and purpose of the discovery sought,
and whether the party seeking the continuance has exercised due diligence to
obtain the discovery sought.[18]

2. Analysis

On April 20, 2004, Barron filed his first amended
original petition in Parker County, Texas. 
On May 17, 2004, Vanier and Miraglia filed a notice of removal, in which
Goldowitz joined, attempting to remove the case to federal court.  The trial court=s
jurisdiction appears not to have revested following the remand from federal
district court until October 13, 2004, because although the federal district
court granted Barron=s motion to remand the case on
August 30, 2004, this order was not filed with the Parker County court until
October 13, 2004.  Goldowitz and Vanier
filed their special appearances on October 19 and  22, 2004, respectively.  On October 28, 2004, Vanier set his special
appearance for hearing on November 9, 2004, and on November 1, 2004, Goldowitz
did the same.

a.  Length
of Time and Materiality








As Barron alleges in his second amended motion
for continuance, less than two weeks passed between the time the federal court=s order
was filed with the trial court and the date that Goldowitz filed his special
appearance, and the hearing on the motion was set approximately two weeks
later.  He therefore claims that he had
inadequate time to conduct discovery regarding jurisdiction.  However, the parties agreed to reset the
special appearance hearing to December 21, 2004, almost two months after
Goldowitz and Vanier filed their special appearances.  In Joe v. Two Thirty Nine Joint Venture,
the Texas Supreme Court rejected the argument of Two Thirty Nine Joint
Venture  (239 JV) that because the case
had been on file for less than two months, it had been deprived of an adequate
opportunity to conduct discovery to respond to its opponent=s motion
for summary judgment.[19]  However, that case was not a special
appearance case.  In addition,
considering the chain of events and all of the circumstances here, discussed
below, we believe that limiting the amount of time that Barron had to conduct
jurisdictional discovery to two months was an abuse of discretion.













In Joe, the court stated that none of the
further discovery that 239 JV desired, even if obtained, would have raised a
fact issue as to the contested element of the cause of action (official
immunity).[20]  The Fifth Circuit used a similar approach in Wyatt
v. Kaplan, which was a personal jurisdiction case.[21]  Wyatt contended that the district court
committed reversible error by dismissing his suit without permitting discovery,
arguing that discovery might have produced the necessary prima facie evidence
of personal jurisdiction.[22]  He argued that it was Aunfair
and illogical@ to require that he Ashoulder
the burden of coming forward with evidence of jurisdiction while denying him
the opportunity to develop that evidence.@[23]  The court stated that A[a]lthough
Wyatt=s
arguments are persuasive as general propositions, they do not require reversal in
this case, because the discovery Wyatt requested would not have produced
evidence supporting his case on jurisdiction.@[24]  The court reasoned that because the
additional contacts with Texas on which Wyatt requested discovery clearly did
not give rise to the cause of action, they would be irrelevant to his attempt
to establish personal jurisdiction.[25]  The court stated that it Aaffirm[ed]
denials of discovery on questions of personal jurisdiction in cases where the
discovery sought >could not have added any
significant facts.=@[26]

A Texas federal court also applied this principle
to deny discovery in a personal jurisdiction internet defamation case, Revell
v. Lidov.[27]  In that case, alleged jurisdiction in Texas
was based on the posting of an article by a Massachusetts resident on a website
maintained in New York City, accessible in the state of Texas, and the
plaintiff argued that the Adepth
and reach of the Defendant=s
actions [had] yet to be fully exposed.@[28]  The court rejected this argument and denied
the request for additional discovery because the plaintiff

[had] not presented [it]
with any indication that such exposure could possibly reveal any evidence that
would be relevant to jurisdiction.  All
relevant information about the nature of [the] website and the posting of [the
defendant=s] article [was]
accessible to the Plaintiff by simply visiting the website.  Moreover, because the Plaintiff only
allege[d] specific jurisdiction, information about other, unrelated contacts
between the Defendants and the state of Texas is irrelevant.[29]

 








The Revell court did not appear to consider how much time the
plaintiff already had for discovery in its analysis.

In our case, in Barron=s second
amended motion for continuance, he provided a list of information that he
desired to discover:

$                  
Information regarding [Vanier and Goldowitz=s] business dealings with
Texas;

$                  
Information about Mr. Goldowitz=s engagement on behalf of Randall York;

$                  
Information about [Vanier and Goldowitz=s] communications with
Mr. York and/or other Texas residents;

$                  
Information about [Vanier and Goldowitz=s] advertising in Texas;

$                  
Information about [Vanier and Goldowitz=s] Texas clients;

$                  
Information about [Vanier and Goldowitz=s] mail, electronic and
telephone communications to Texas or with Texas residents;

$                  
Information about [Vanier and Goldowitz=s] travels to Texas;

$                  
Information about [Vanier and Goldowitz=s] posting on Yahoo that
mentions Texas;

$                  
Information from Mr. Goldowitz regarding where he received the
purported factual basis for his Yahoo post about a Texas corporation;

$                  
Information from Mr. Goldowitz regarding [a portion] of his affidavit;

$                  
Information from [Vanier and Goldowitz] regarding other general
contacts with Texas;

$                  
Information from [Vanier and Goldowitz] regarding
other specific contacts and/or internet posts the[y] each have made.








At the hearing, Barron presented other items he wanted to discover
more information about, including information regarding Vanier=s
relationship and contacts with Miraglia and information regarding whether
Vanier and Miraglia had helped fund York=s
lawsuit.













Thus, Joe and Revell are
distinguishable.  Barron, like the Revell
plaintiff, only alleges that Vanier and Goldowitz have specific jurisdiction
contacts with Texas.  We do not analyze
at this stage whether Barron=s cause
of action Aarises from or relates to@ each of
the specific items for which he requests additional discovery (as would be
required after further discovery). 
However, we believe that at least some of the categories of information
for which Barron requests discovery relate to specific jurisdiction, such as
his request for A[i]nformation about [Vanier and
Goldowitz=s] posting on Yahoo that
mentions Texas@ and for A[i]nformation
from Mr. Goldowitz regarding where he received the purported factual basis for
his Yahoo post about a Texas corporation.@  Therefore, at least some of Barron=s
requested information is possibly material to establishing personal
jurisdiction.  Also, unlike the
information requested in Joe, if the requested information exists, it
would affect the issues at handCwhether
personal jurisdiction is proper over Vanier and Goldowitz.   Other jurisdictions have also addressed the
issue of whether additional discovery should be allowed with regard to personal
jurisdiction.  In El‑Fadl v.
Central Bank of Jordan, the District of Columbia=s Court
of Appeals held that a Aplaintiff faced with a motion to
dismiss for lack of personal jurisdiction is entitled to reasonable discovery,
lest the defendant defeat the jurisdiction of a federal court by withholding
information on its contacts with the forum.@[30]  Similarly, the Ninth Circuit Court of Appeals
held that the district court abused its discretion by denying jurisdictional
discovery in a tort action since further discovery might demonstrate facts
sufficient to constitute a basis for jurisdiction.[31]  In addition, other federal courts allow
further discovery on the issue of personal jurisdiction if the movant makes a
good-faith showing, provides a colorable basis for, or makes a prima facie case
of personal jurisdiction, or provides a reason to believe that discovery would
reveal sufficient minimum contacts.[32]  We agree with this reasoning and that applied
by the Fifth Circuit and Texas federal courts, and we believe that Barron has
alleged sufficient information which, if existing and discovered, could support
his allegations of personal jurisdiction over Vanier and Goldowitz, especially
in light of Vanier=s and Goldowitz=s
apparent strategic avoidance of Barron=s
attempted discovery, discussed below.

b.  Due
Diligence

Barron alleges that Vanier and Goldowitz Aset up a
myriad of road blocks which they now say were all reasonable and necessary@ and A[t]he
fact that [he] could not hurdle all [of] the road blocks and obtain a ruling on
[them] prior  to the hearing does not
suggest [that] he was not diligent.@  We agree.








On November 10, 2004, Barron served Vanier and
Goldowitz with requests for disclosure and requests for production, and he
served them with notices of deposition on November 15, 2004.  Barron alleged that even though he was
diligent in attempting to obtain discovery, Goldowitz and Vanier failed to
respond substantively to the requests, asserted privileges and objections to many
of them, and quashed the deposition notices. 
Barron claims that, as a result, he was not given the opportunity to
obtain written discovery or depose or cross-examine them regarding statements
in their affidavits.

Vanier made broad objections and claims of
privilege to Barron=s requests for production, and
stated that he would produce unobjectionable documents only if Barron signed a
confidentiality agreement.  Goldowitz
likewise made broad objections, but offered to produce certain documents
without limitation.








As for the claim of privilege in both
Vanier=s and
Goldowitz=s responses, because
Barron did not formally request a privilege log until December 15 or 16, 2004,
the privilege log was not due back to him before the hearing on the motion.[33]  Vanier claimed that he would have produced
the privilege log at the hearing if he had been given more time, but that
because the privilege log was not due until after the hearing and he only had
four days to respond to the request, he was unable to produce the log in time
for the hearing.  Regardless of the
reasoning, Barron was still unable, by the time of the hearing, to assess the
applicability of the privileges assertedCthe very
purpose of a privilege log.[34]

The Texas Supreme Court has indicated that
failure to file a motion to compel discovery or otherwise attempt to obtain the
items objected to may indicate a lack of diligence.[35]  Barron never filed a motion to compel
discovery against Vanier or Goldowitz. 
However,  the limited discovery
responses were not given to him until late November and early December.  Considering the very short time period that
he had to file the motion to compel and the restricted access he had to
information due to Vanier=s and Goldowitz=s
limited responses, this factor alone is insufficient to show a lack of
diligence.

In light of the above, we hold that the trial
court abused its discretion in denying Barron=s motion
for continuance as to Goldowitz and Vanier. 
Although Barron appears to also argue that his motion for continuance
should be granted with regard to Miraglia, he did not join Miraglia in his
appeal and we do not decide this issue.

 








c.  Barron=s
Affidavits

Pursuant to Rule 120a(3), Barron attached
affidavits from three attorneys who represented him to his motion for
continuance.  The affidavits regarding
Goldowitz and Vanier are virtually identical and state, in relevant part:

Since this matter was
remanded to the present Court, [Goldowitz/Vanier] has filed a special
appearance. [Barron] has not secured all the facts essential to justify his
opposition pursuant to TRCP 120a(3). 
[Barron] has diligently been responding to numerous motions by
[Goldowitz/Vanier] in the federal action and due to the recent remand has been
unable to secure discovery from [Goldowitz/Vanier].  [Barron] therefore requests that this Court
grant a continuance . . .

 

Specifically, [Barron]
needs to obtain discovery from [Goldowitz/Vanier] regarding his contacts with
the State of Texas, his business dealings in Texas and his direction of torts
at Texas residents. [Barron] believes [he] would be able to obtain this
information with discovery.  This information
is material to the special appearance as it shall provide proof that
[Goldowitz/Vanier] has . . . availed himself to the jurisdiction of this Court.

 








Goldowitz argues that the affidavits are Aconclusory
and were essentially worthless for demonstrating diligence and necessity to the
trial court.@ 
He cites Rocha v. Faltys for the proposition that A[t]he
affidavit of diligence must state with particularity what diligence was used;
conclusory allegations of diligence are not sufficient.@[36]  Goldowitz also argues that because the
affidavits were executed on November 3, 2004, they did not address his failure
to take advantage of the additional time afforded by the postponing of the
hearing.  Vanier alleges that Barron=s
affidavits are insufficient because they did not provide Areasons@ why he
could not obtain an affidavit with essential facts to justify his opposition in
accordance with 120a(3), but merely stated that Ahe has
not secured@ the facts.  Vanier also argues that because the
affidavits state that Barron had not secured such facts, it constituted
a judicial admission that he did not have the facts and thus could not
defeat Vanier=s special appearance.













Barron responds that Rocha is
inapplicable because that court did not refuse to allow discovery based on the
affidavit; rather, it held that the motion failed to state why the
evidence was needed and failed to show diligence.[37]  We agree. 
Although the Rocha court discussed the particularity with which
an affidavit must state what diligence was used, it  specifically noted that Athe motion
stated that the continuance was sought >to
explore this evidence and depose other witnesses=@ and A[t]he motion
failed to identify the specific evidence that would have been sought had the
continuance been granted.  Nor does the motion
establish or discuss the materiality of the new evidence to the Rochas=
claims.  This lack of specificity does
not comply with the requirements of Rule 252.@[38]  The Rocha court continues that an
attorney=s
affidavit Acontained only conclusory
statements that the . . . attorneys had been diligent and that efforts had been
made to find [the deponent] earlier in the discovery process.  The affidavit did not describe the particular
efforts that were made.@[39]  However, unlike Rule 120a(3), Rule 252, not
applicable to our case, specifically provides that the affidavit must show that
one Ahas used
due diligence to procure such testimony, stating such diligence.@[40]  Therefore, these latter statements in Rocha=s
holding do not apply to our case.  We
believe that the reasons stated in the affidavits cause Ait [to]
appear . . . that Barron cannot . . . present by affidavit@ the
facts he needed to justify his opposition to the special appearance, and we
reject Vanier=s argument that they do not
comply with Rule 120a.  In addition, we
believe that Barron does provide in his affidavit at least one of the reasons
why he had been unable to secure facts essential to justify his opposition:
because the case was only recently remanded. 
Moreover, although the affidavits were executed on November 1, 3, and 5,
2004Clong
before the December 21, 2004 hearingCthe
reasons provided in the affidavits did not change thereafter:  the case was still recently remanded and
Barron was still unable to obtain discovery.

In response to the judicial admission allegation,
Barron points out that, if any time a plaintiff sought a continuance to conduct
discovery on jurisdiction as permitted under Rule 120a(3) it could face a claim
that, by virtue of the request being filed, the plaintiff had made a judicial
admission that jurisdiction did not exist in Texas, then this
possibility would defeat the purpose of permitting discovery.  We agree. 
If a plaintiff had what it considered to be a sufficient but shaky basis
for jurisdiction over a defendant, but knew the basis would be strengthened by
future discovery, it would be discouraged from filing a motion for further
discovery if by doing so, it was deemed to admit that its case as is would fail
for lack of personal jurisdiction.

For the above reasons, we hold that Barron=s
affidavits are sufficient to support his motion for continuance.

III. 
Conclusion








Because we have held that the trial court abused
its discretion by denying Barron=s motion
for continuance to conduct discovery on personal jurisdiction, its ruling on
Vanier=s and
Goldowitz=s special appearances was
premature.  We do not reach Barron=s
remaining issues.[41]  We reverse the trial court=s order
denying the motion for continuance and remand this case for additional
discovery and for further proceedings.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT
and MCCOY, JJ.

DELIVERED:  March 30, 2006











[1]See Cal. Civ. P. Code ' 425.16 (West 2004 & Supp. 2005).





[2]Id.





[3]Varian Med. Sys., Inc. v. Delfino, 106 P.3d 958, 966 (Cal. 2005) (citing
Simmons v. Allstate Ins. Co., 112 Cal. Rptr. 2d 397, 400-01 (Cal. Ct. App.
2001)).





[4]Tex. Civ. Prac. & Rem.
Code Ann. ' 51.014(a)(7) (Vernon Supp. 2005).





[5]See
Tex. R. App. P. 28.1.





[6]Tex.
R. App. P. 26.1(b).





[7]Goff v. Tuchscherer, 627 S.W.2d 397, 398 (Tex. 1982).





[8]Id.





[9]Id. at
398-99.





[10]Schaeffer Homes,
Inc., v. Esterak, 792 S.W.2d 567, 568-69 (Tex. App.CEl Paso
1990, no writ).





[11]Id. at 568.





[12]Id.





[13]Id. at
568-69.





[14]Id. at 569.





[15]Tex. R. Civ. P. 120a(3).





[16]Royal Mortgage Corp. v. Montague, 41 S.W.3d 721, 738 (Tex. App.CFort
Worth 2001, no pet.), disapproved of on other grounds, Michiana Easy Livin=
Country, Inc. v. Holten, 168 S.W.3d
777, 778-89 (Tex. 2005); see also BMC Software Belg., N.V. v.
Marchand, 83 S.W.3d 789, 800 (Tex. 2002).





[17]BMC Software, 83 S.W.3d at 800.





[18]Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 161 (Tex. 2004).





[19]Id. at 160.





[20]Id. at
161-62.





[21]Wyatt v. Kaplan, 686 F.2d 276, 283 (5th
Cir. 1982).





[22]Id.





[23]Id.





[24]Id.
(emphasis added).





[25]Id. at
284-85.





[26]Id. at 284
(quoting Washington v. Norton Mfg., Inc., 588 F.2d 441,
447 (5th Cir. 1979); cert. denied, 442 U.S. 942 (1979)).





[27]Revell v. Lidov,
No. 3:00-CV-1268-R, 2001 WL 285253, at *8 (N.D. Tex. Mar. 20, 2001), aff=d, 317 F. 3d 467 (5th Cir. 2002).





[28]Id.





[29]Id. (citation
omitted).





[30]El‑Fadl v. Cent. Bank of
Jordan, 75 F.3d
668, 676 (D.C. Cir. 1996).





[31]Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d
1122, 1135 (9th Cir. 2003); see also In re Magnetic Audiotape Antitrust
Litig., 334 F.3d 204, 207-08 (2nd Cir. 2003).





[32]See, e.g.,
Formica v. Cascade Candle Co., 125 F. Supp. 2d 552, 556 (D.D.C. 2001)
(quoting Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.,
148 F.3d 1080, 1090 (D.C. Cir. 1998)); Smith v. S & S Dundalk Eng=g
Works, Ltd., 139 F.
Supp. 2d 610, 623 (D.N.J. 2001); Booth v. Verity, Inc., 124 F.
Supp. 2d 452, 457-58 (D. Ky. 2000) (citing Chrysler Corp. v. Fedders Corp.
643 F.2d 1229, 1240 (6th Cir. 1981), cert. denied, 454 U.S. 893 (1981); Granville
Gold Trust-Switzerland v. Commissione Del Fallimento/Interchange Bank, 928
F. Supp. 241, 244 (E.D.N.Y. 1996), aff=d 111 F.3d
123 (2nd Cir. 1997) (citing N.Y. Marine Managers, Inc. v. Topor‑1,
1989 WL 4030, *1 (S.D.N.Y. Jan. 17, 1989); Asarco, Inc. v. Glenara,
Ltd., 912 F.2d 784, 785 (5th Cir. 1990)); Arch v. Am. Tobacco Co.,
984 F. Supp. 830, 834 (E.D. Pa. 1997) (citing Mellon Bank (East) PSFS v.
Farino, 960 F.2d 1217, 1223 (3d Cir. 1992); Provident Nat'l Bank v. Cal.
Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)); Ellis v.
Fortune Seas, Ltd., 175 F.R.D. 308, 312 (D. Ind. 1997).





[33]See Tex. R. Civ. P. 193.3(b).





[34]See id.





[35]BMC Software,
83 S.W.3d at 800-01.





[36]Rocha v. Faltys,
69 S.W.3d 315, 319 (Tex. App.CAustin 2002, no pet.) (citing Gregg v. Cecil,
844 S.W.2d 851, 853 (Tex. App.CBeaumont 1992, no writ)).





[37]Id.





[38]Id.  Tex. R. Civ. P. 252 provides for the application for continuance for
want of testimony.





[39]Rocha, 69
S.W.3d at 319.





[40]Tex. R. Civ. P. 252 (emphasis added).





[41]See Tex. R. App. P. 47.4.